## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| *IN RE* SUBPOENA TO<br>PING WANG<br><br>Dr. Ping Wang, M.D., Esq.<br>Andrews Kurth Kenyon LLP<br>1350 I Street, NW, Suite 1100<br>Washington, DC 2005<br>Non-Party Movant | Misc. Action No. 16-2016 (CKK) |
| PHIGENIX, INC.,<br>　　　　Plaintiff<br>　　v.<br>GENENTECH, INC.,<br>　　　　Defendant | Civil Action No. C 15-01238 BLF-NMC<br>Pending in the United States<br>District Court for the<br>Northern District of California |

**MEMORANDUM OPINION AND ORDER**
(October 13, 2016)

　　Before the Court is the [2] Motion of Petitioners Dr. Ping Wang and Phigenix, Inc. (hereinafter "Petitioners" or "Dr. Wang and Phigenix") "for Protective Order to Stay the Deposition of Dr. Ping Wang, or in the Alternative to Limit the Scope of Dr. Wang's Deposition," (hereinafter "Petitioners' Motion for Protective Order") and related, ancillary motions.[1] Despite what initially appears to be vastly disparate positions, the parties agree on the questions of greatest import and substance related to the deposition of Dr. Wang. Accordingly, the issue before the Court

---

[1] The Court shall also address Petitioners' [1] "Motion to Stay Dr. Wang's Deposition Pending the Resolution of the Motion for Protective Order" and Petitioners' [19] "Unopposed Motion for Leave to File Under Seal Reply [Unredacted] in Support of Motion to Stay and Motion for Protective Order."

is a narrow one. Petitioners seek not to prevent Respondent Genentech, Inc. (hereinafter "Respondent" or "Genentech") from deposing Dr. Wang, but rather the much more moderate relief of postponing her deposition while a discovery dispute is litigated in the underlying patent infringement action pending in the United States District Court for the Northern District of California (hereinafter "the California Action"). Petitioners seek, in the alternative, to limit the scope of the deposition of Dr. Wang and to have this Court preemptively enjoin Respondent from seeking a second deposition of Dr. Wang in the future. Upon consideration of the pleadings,[2] the relevant legal authorities, and the record as a whole, the Court GRANTS Petitioners' Motion for Protective Order as to the deposition of Dr. Wang presently scheduled for October 14, 2016, and hereby ORDERS that the deposition of Dr. Wang be STAYED pending the resolution of the discovery dispute in the California Action. The Court does not address Petitioners' alternate request and makes no ruling regarding any future deposition of Dr. Wang.

## I.   BACKGROUND

The instant motion arises in the context of the California Action, in which Phigenix alleges infringement of its U.S. Patent No. 8,080,534 ("the '534 patent") by Genentech.[3] Pet'rs'

---

[2] The Court's consideration has focused on the following documents:
- "Motion for Protective Order to Stay the Deposition of Dr. Ping Wang, or in the Alternative to Limit the Scope of Dr. Wang's Deposition" of Petitioners Dr. Wang and Phigenix ("Pet'rs' Mot. for Protective Order"), ECF No. 2;
- Genentech, Inc.'s "Opposition to Phigenix, Inc.'s Motion to Stay and Motion for Protective Order to Stay the Deposition of Dr. Ping Wang (Redacted)" (Resp't's Opp'n), ECF No. 16, Ex. B; and
- Pet'rs' "Reply [Redacted] in Support of Motion to Stay and Motion for Protective Order" ("Pet'rs' Reply"), ECF No. 20.

In an exercise of its discretion, the Court finds that holding oral argument in this action would not be of assistance in rendering a decision. *See* LCvR 7(f).

[3] The underlying facts of the California Action will be set out only briefly and only to the limited extent necessary to properly dispose of the matters before this Court.

Mot. for Protective Order at 2. Dr. Wang served as outside patent prosecution counsel to Phigenix and as the attorney of record with the U.S. Patent and Trademark Office ("U.S. PTO") for U.S. Patent Application No. 12/708,294 ("the '294 application") that ultimately issued as the '534 patent. *Id.* Genentech has raised an inequitable conduct defense as its Sixth Additional Defense in its First Amended Answer in the California Action. Pet'rs' Mot. for Protective Order, Ex. D at 7-15. Genentech predicates its assertion of this defense on Dr. Wang's filing of a terminal disclaimer in order to overcome a provisional rejection of the application during her prosecution of the '294 application. *Id.* at 7. Genentech argues in support of this defense that the terminal disclaimer contained material false statements related to Phigenix's ownership interest in the '294 application and a conflicting, prior application. *Id.* at 7-8. Genentech argues that Dr. Wang filed the terminal disclaimer (or caused it to be filed) "with the intent to deceive the PTO into believing that the double patenting rejection had been overcome, which constitutes inequitable conduct rendering the '534 patent unenforceable." *Id.* at 14-15. Accordingly, "Genentech's inequitable conduct claim turns on whether or not Dr. Wang deliberately deceived the PTO, and Genentech seeks to take Dr. Wang's deposition now to develop the factual record on that claim." Resp't's Opp'n at 2.

A discovery dispute in the California Action has given rise to the instant motion before this Court. In response to Genentech subpoenas and discovery requests, Phigenix has asserted attorney-client privilege in withholding certain documents. Pet'rs' Mot. for Protective Order at 3. In addition to identifying what it believes to be deficiencies in the privilege logs prepared by Phigenix, Genentech also claims that by the production of other documents—in particular, an e-mail sent by Dr. Wang—Phigenix has waived attorney-client privilege. Pet'rs' Mot. for Protective Order at 3-4. It appears that the parties have made some efforts to resolve this discovery dispute

without intervention of the court, but have also collaborated in drafting a joint discovery letter brief; this letter brief has yet to be filed with the California court. Pet'rs' Mot. for Protective Order at 5; Resp't's Opp'n at 1; *see also* Pet'rs' Mot. for Protective Order, Ex. H (filed under seal in this Court). Due to the nature of the documents in dispute, if the parties more formally bring the matter before the California court for resolution, and if it is resolved even partially in Genentech's favor, "that could potentially result in production of documents on which Dr. Wang is an author or recipient. If Dr. Wang were to be deposed prior to such production, it is foreseeable that Genentech may seek a second deposition of Dr. Wang." Pet'rs' Mot. for Protective Order at 5 (quoting an August 30, 2016, e-mail from counsel for Phigenix to counsel for Genentech, appended as Ex. K). As a result, Phigenix seeks to delay the deposition of Dr. Wang until the discovery dispute and the privilege-waiver issues have been resolved, either by the California court or by agreement of the parties. Pet'rs' Mot. for Protective Order at 3-6; Pet'rs' Reply at 3. By contrast, Genentech claims that "[t]he potential dispute about whether Phigenix has waived the attorney-client privilege is not a basis for delaying the deposition," and further argues that "Genentech can far more precisely determine whether a waiver has been committed by taking Dr. Wang's deposition and determining what testimony Phigenix allows her to give." Resp't's Opp'n at 2-3. It is this narrow question alone—whether Genentech should be permitted to depose Dr. Wang prior to the resolution of the discovery dispute—that is before this Court.

## II.    LEGAL STANDARD

Although the Federal Rules of Civil Procedure allow parties wide latitude in seeking discovery of "any nonprivileged matter that is relevant to any party's claim or defense," Fed. R. Civ. P. 26(b)(1), there are nonetheless limits on what a party may obtain through discovery. In-

deed, a court may quash or modify a subpoena where compliance with the subpoena would require "disclosure of privileged or other protected matter" or "subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A)(iii), (iv). Where an individual seeks such relief from the obligations of a subpoena, the "'burden of proving that a subpoena is oppressive is on the party moving to quash.' Whether a burdensome subpoena is reasonable 'must be determined according to the facts of the case,' such as the party's need for the documents and the nature and importance of the litigation." *Linder v. Department of Defense*, 133 F.3d 17, 24 (D.C. Cir. 1998) (citations omitted) (quoting *Northrop Corp. v. McDonnell Douglas Corp.*, 751 F.2d 395, 403, 407 (D.C. Cir. 1984). In showing that good cause exists to modify the subpoena and thereby limit discovery, the moving party "has a heavy burden of showing extraordinary circumstances based on 'specific facts' that would justify an order." *Eidos Display, LLC v. Chunghwa Picture Tubes, Ltd.*, 296 F.R.D. 3, 6 (D.D.C. 2013) (citations omitted) (quoting *United States v. Kellogg Brown & Root Servs., Inc.*, 285 F.R.D. 133, 134 (D.D.C. 2012). In evaluating the moving party's request, the Court must balance the burden to the moving party against the "requestor's need for, and relevance of, the information sought." *Eidos Display*, 296 F.R.D. at 6.

### III.  ANALYSIS

By their agreement that it is proper for Genentech to depose Dr. Wang, the parties significantly narrow the issue before the Court in resolving Petitioners' motion: whether Genentech may proceed with the deposition of Dr. Wang before the permissible scope of the deposition has been clarified by the resolution of the discovery dispute in the California Action or whether Dr. Wang's deposition should be delayed until after the discovery dispute has been resolved.

Petitioners do not contest but instead "acknowledge that Genentech may choose to depose Dr. Wang regarding non-privileged information concerning its Sixth Affirmative [sic] Defense in the California Action." Pet'rs' Reply at 2. Accordingly, "Dr. Wang is prepared to testify regarding non-privileged and non-protected matters." [4] Pet'rs' Mot. for Protective Order at 6. Furthermore, Petitioners agree that questions relating to Dr. Wang's "filing of the terminal disclaimer that is at issue in Genentech's affirmative defense of inequitable conduct" are properly within the scope of her deposition.[5] *Id.* at 11.

Although the parties disagree on its impact on the timing of Dr. Wang's deposition, the parties are also in agreement that the discovery dispute in the California Action affects the scope of the deposition testimony that may properly be elicited from Dr. Wang. Some of the documents as to which Phigenix has asserted privilege were either written or received by Dr. Wang. Pet'rs' Mot. for Protective Order at 5 (quoting an August 30, 2016, e-mail from counsel for Phigenix to counsel for Genentech, appended as Ex. K). As a result, Genentech's ability to question Dr. Wang about these documents turns on the resolution of the privilege-waiver dispute. Genentech does not dispute this, but rather seeks to take Dr. Wang's deposition prior to the resolution of the

---

[4] Although Petitioners discuss the general preference against taking depositions of opposing counsel, they do not raise this as an impediment to taking the deposition of Dr. Wang. *See, e.g.*, *Coleman v. District of Columbia*, 284 F.R.D. 16, 18 (D.D.C. 2012) ("When a party seeks to depose opposing counsel, the normally permissive discovery rules become substantially less so."); *Sterne Kessler Goldstein & Fox, PLLC v. Eastman Kodak Co.*, 276 F.R.D. 376, 382 (D.D.C. 2011). *See also*, *Shelton v. American Motors Corp.*, 805 F.2d 1323 (8th Cir. 1986).

[5] The acknowledgment by Petitioners that examination of Dr. Wang on these matters is proper accords with the principle that courts generally permit deposition of patent prosecution counsel where an inequitable conduct defense has been raised. *See, e.g.*, *Sterne Kessler*, 276 F.R.D. at 382-83 (surveying the analysis by other courts in setting out the general permissibility of deposing patent prosecution counsel where an inequitable conduct defense has been raised, though finding these cases inapposite to the issues before the court).

discovery dispute in order "to test Phigenix's intended privilege line-drawing." Resp't's Opp'n at 3-4.

From this shared premise, however, the parties disagree on whether the deposition of Dr. Wang can contribute to the resolution of the privilege-waiver dispute and whether any such benefit is outweighed by the possible burden of subjecting Dr. Wang to a second deposition. Petitioners clearly articulate their two central objections to the taking of Dr. Wang's deposition prior to the resolution of this dispute in the California Action: the risk of the deposition questions encroaching on privileged material and the risk of subjecting Dr. Wang to a second deposition after the California court has resolved the privilege-waiver dispute. Pet'rs' Mot. for Protective Order at 6-8. Both concerns are firmly rooted in the Federal Rules of Civil Procedure and are to be given substantial weight. Fed. R. Civ. P. 45(d)(3)(A)(iii), (iv). Petitioners' request to delay Dr. Wang's deposition until after the California court has resolved the privilege-waiver issue seeks the narrowest of modifications to the subpoena and effectively guards against the dual risks of seeking disclosure of protected materials and subjecting Dr. Wang to the undue burden of a second deposition. Particularly because Genentech will have an opportunity to depose Dr. Wang and obtain all proper, non-privileged deposition testimony after the scope of the privilege and any waiver have been clarified in the California Action, Petitioners have met their burden in showing that good cause exists to delay Dr. Wang's deposition.

Far from providing a justification for proceeding with the deposition prior to the resolution of the discovery dispute in the California Action, Genentech's asserted purpose of conducting the deposition of Dr. Wang to "test Phigenix's intended privilege line-drawing," Resp't's Opp'n at 3-4, instead reinforces the appropriateness of delaying the deposition. "[T]he risk of encountering privilege and work-product issues" is one of the important factors in considering the

appropriateness of a deposition of opposing counsel.[6] *Sterne Kessler*, 276 F.R.D. at 382 (quoting *In re Subpoena Issued to Dennis Friedman*, 350 F.3d 65, 70 (2d Cir. 2003)). In seeking to "test" through the deposition of Dr. Wang the scope of the privilege asserted by Phigenix, Genentech turns the "risk" of encountering privileged materials to a near certainty. Furthermore, Genentech's assessment that for Dr. Wang to be deposed a second time would "not [be] a genuine hardship at all," Resp't's Opp'n at 2, is insufficient to overcome the well-established protection for witnesses against multiple depositions. Finally, Genentech has not suggested that it would be prejudiced in the underlying California Action by delaying Dr. Wang's deposition until after the discovery dispute has been resolved and the permissible scope of her deposition clarified.

## IV. CONCLUSION

For all of the foregoing reasons, Petitioners have shown good cause for delaying the deposition of Dr. Wang until after the privilege-waiver dispute has been resolved in the California Action, and it is hereby:

ORDERED that Petitioners' [2] Motion for Protective Order be GRANTED and the deposition of Dr. Wang be STAYED pending the resolution of the discovery dispute in the California Action; and it is

---

[6] Whether Dr. Wang is properly characterized as "opposing counsel" is a question that need not be settled for resolution of the instant motion. While Dr. Wang is not litigation counsel to Phigenix in the California Action and her deposition is sought particularly with respect to her representation of Phigenix as patent prosecution counsel, she is a partner at the firm representing Phigenix in the California Action and continues to serve as outside patent counsel to Phigenix. Pet'rs' Mot. for Protective Order at 2. As such, many of the same concerns that guide analysis of the permissibility of deposing opposing counsel pertain. Furthermore, and perhaps more importantly, the parties agree that Dr. Wang's deposition is both necessary and permissible, while disagreeing merely on the timing and scope of the deposition. Pet'rs' Mot. for Protective Order at 2, 6 ("Dr. Wang is prepared to testify as to non-privileged and non-protected information regarding the filing of the terminal disclaimer."); Resp't's Opp'n at 2-4.

FURTHER ORDERED that Petitioners' [1] Motion to Stay Dr. Wang's Deposition Pending the Resolution of the Motion for Protective Order be DENIED as moot; and it is

FURTHER ORDERED that Petitioners' [19] Unopposed Motion for Leave to File Under Seal Reply [Unredacted] in Support of Motion to Stay and Motion for Protective Order be GRANTED to the extent that the unredacted Reply appended to said Motion shall be retained under seal and Petitioners' [20] Redacted Reply shall remain available on the public docket.

**SO ORDERED.**

                                              /s/
                                  COLLEEN KOLLAR-KOTELLY
                                  United States District Judge